UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER GREENWOOD, an individual,<br><br>                       Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                       Defendant. | Case No.: 16cv1754 DMS (DHB)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND**<br>**(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

This matter comes before the Court on Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. The motions are fully briefed. For the reasons set out below, the Court denies Plaintiff's motion and grants Defendant's motion.

## I.

## FACTUAL BACKGROUND

On February 27, 2012, Plaintiff Christopher Greenwood was a member of the United States Navy. On the night of February 27, 2012, Plaintiff fell from his apartment and was found lying on the sidewalk.[1] He was transported via ambulance to UCSD Medical Center

---

[1] It is unclear exactly how or where Plaintiff fell from his apartment. In the Police Report, a witness states he "heard a thump on" an awning above him, "looked up and saw legs

where he was diagnosed with a fractured skull. (*Id.* at ADM000029.) Plaintiff was admitted to the Intensive Care Unit, and remained in the hospital until March 3, 2012. Plaintiff returned to the hospital on March 4, 2012, where he was readmitted and discharged the next day.

Plaintiff had an otolaryngology consult at the Naval Medical Center ("NMC") on March 9, 2012, at which time he was complaining primarily of facial nerve weakness. (*Id.* at ADM000285.) Four days later, Plaintiff had an audiology assessment at the NMC. (*Id.* at ADM000280-82.) Two days after that, Plaintiff returned to the NMC for follow-up, and was seen by P.M. Kearney, PA-C. (*Id.* at ADM000277-79.) At that visit, Plaintiff reported feeling sore and having upper back pain. (*Id.* at ADM000277.) PA Kearney's notes indicate "No dizziness, no vertigo, no decrease in consciousness, no decrease in concentrating ability, no confusion, no memory lapses or loss, no taste disturbances, no speech difficulties, no arm weakness, and no leg weakness. No gait abnormality. Good coordination and no sensory disturbances." (*Id.* at ADM000278.) PA Kearney placed Plaintiff on Sick in Quarters status for thirty days. (*Id.* at ADM000304.)

Five days later, Plaintiff returned for follow-up with the otolaryngology department. (*Id.* at ADM000274-75.) At that visit, Plaintiff denied any dizziness or vertigo and reported "no difficulty with balance." (*Id.* at ADM000274.)

A little more than two weeks later, on April 5, 2012, Plaintiff presented to the Physical Medicine and Rehab Clinic at the NMC. (*Id.* at ADM000271-73.) During that visit, Plaintiff reported no balance problems. (*Id.* at ADM000272.)

---

dangling over the edge." (Administrative Record ("AR") at ADM000349.) The witness "said the legs slowly slid down the side" and Plaintiff "fell sideways and hit the ground." (*Id.*) Plaintiff states he was taking the trash out of his apartment and "slipped and fell down the stairwell due to the rain and wet steps." (*Id.* at SADM000410BQ.) It appears alcohol may have been a factor in Plaintiff's fall, as the officer responding to the scene smelled alcohol "emitting" from Plaintiff, (*id.* at ADM000349), and his blood alcohol content was reported to be .24, three times the legal limit for operating a motor vehicle.

2

At his next visit to the Otolaryngology Department on April 17, 2012, Plaintiff reported he had returned to work and was exercising without any problems. (*Id.* at ADM000269.) He also denied any episodes of dizziness or vertigo, or difficulty with balance. (*Id.*)

On August 29, 2013, Plaintiff filed a claim for $50,000 in benefits under the Traumatic Servicemembers' Group Life Insurance Policy ("TSGLI") based on the February 27, 2012 accident. (*Id.* at ADM00003.) Plaintiff's claim was based on his suffering a traumatic brain injury and his resulting inability to independently perform three activities of daily living ("ADLs") for over thirty days. (*Id.*) In support of his claim, Plaintiff submitted his medical records from USCD and the NMC, and included a statement from Bassam Zakhour, M.D. (*Id.*) Dr. Zakhour did not treat Plaintiff, but reviewed his medical records. (*Id.*) Plaintiff also submitted a statement on his own behalf and a statement from his friend Starr Altsmannsberger. (*Id.*) That claim was denied on March 11, 2014. (*Id.* at ADM000329.) The basis for the denial was Plaintiff's failure to provide "enough medical information to support that you could not perform ADLs independently." (*Id.*)[2]

On April 7, 2014, Plaintiff filed an appeal of that decision. (*Id.* at ADM000331.) That appeal was denied on June 27, 2014. (*Id.* at SADM000410AG.) The denial letter states, "The medical evidence you provided was evaluated by a Medical Officer assigned to the Navy Personnel Command. It was determined that your claimed injuries and the available medical documentation were inconsistent with the program definition for 15 consecutive days of hospitalization or the loss of two or more ADLs for 120 or more days." (*Id.*)

/ / /

/ / /

---

[2] Plaintiff's claim for hospitalization was also denied because it did not meet the TSGLI standard. (*Id.*) Plaintiff does not dispute that reasoning here.

On August 11, 2014, Plaintiff appealed that decision to the TSGLI Appeals Board. (*Id.* at AMD000407-09.) That appeal was denied on January 22, 2015. (*Id.* at AMD000411.)

Plaintiff filed a request for reconsideration of that denial on February 3, 2015. (*Id.* at AMD000415-16.) That request was denied on March 9, 2015. (*Id.* at AMD000451.) Plaintiff filed a follow up request to that denial, (*id.* at ADM000452), to which he attached a medical analysis from Nancy Olson, MSN, RN, but that request was also denied. (*Id.* at ADM000471.)

On July 7, 2016, Plaintiff filed the present case challenging the denial of his claim for benefits. The present motions followed.

## II.

## DISCUSSION

Title 38 U.S.C. § 1975 confers jurisdiction on district courts "to review decisions with regard to TSGLI claims. Unfortunately, no statute or regulation offers an explication of the standard of review that the Court should apply." *Fail v. United States*, No. 12-cv-01761-MSK-CBS, 2013 U.S. Dist. LEXIS 139224, at *4-5 (D. Colo. Sept. 27, 2013). "Ordinarily when a federal statute creates a right to judicial review of an agency decision, but does not set forth the standard of review to be used in conducting such a review, the Court is to apply the familiar 'arbitrary and capricious' review dictated by the Administrative Procedures Act[.]" *Id.* at *5. Under the APA, a court will "set aside an agency's actions 'only if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *In re Big Thorne Project v. United States Forest Service*, No. 1:14-cv-00013-RRB, 2017 U.S. App. LEXIS 8953, at *7 (9th Cir. May 23, 2017) (quoting *Or. Nat. Res. Council Fund v. Goodman*, 505 F.3d 884, 889 (9th Cir. 2007)). In making this determination, "the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' This inquiry must 'be searching and careful,' but 'the ultimate standard of review is a narrow one.'" *March v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)

(quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Agency actions will be found to be arbitrary and capricious,

> "if the agency has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of the agency's expertise."

*Yakutat, Inc. v. Gutierrez*, 407 F.3d 1054, 1067 (9th Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). "'This standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.'" *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1173-74 (9th Cir. 2016) (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns v. Blank*, 693 F.3d 1084, 1091 (9th Cir. 2012)).[3]

Turning to the decision at issue here,

> [a] member of the uniformed services who is insured under Servicemembers' Group Life Insurance shall automatically be insured for traumatic injury in accordance with this section. Insurance benefits under this section shall be payable if the member, while so insured, sustains a traumatic injury on or after December 1, 2005, that results in a qualifying loss specified pursuant to subsection (b)(1).

38 U.S.C. § 1980A(a)(1). In this case, there is no dispute Plaintiff suffered a traumatic brain injury. The issue is whether Plaintiff suffered a "qualifying loss."

///

---

[3] In his motion, Plaintiff argues the "benefit of the doubt" rule applies to his case, and Defendant's failure to apply that rule was arbitrary and capricious, an abuse of discretion and contrary to law. However, Plaintiff admits he did not raise this issue during the administrative process. (*See* Pl.'s Response and Reply at 8.) His failure to do so amounts to a waiver, and thus the Court declines to consider that argument here. *Coker v. United States*, No. 3:15CV-00202-JHM, 2016 U.S. Dist. LEXIS 173104, at *13-14 (W.D. Ky. Dec. 14, 2016).

In the event of a traumatic brain injury, a "qualifying loss" includes "the inability to carry out the activities of daily living[.]" 38 U.S.C. § 1980A(b)(1)(H). "For purposes of this subsection: … The term 'inability to carry out the activities of daily living' means the inability to independently perform two or more of the following six functions: (i) Bathing. (ii) Continence. (iii) Dressing. (iv) Eating. (v) Toileting. (vi) Transferring." 38 U.S.C. § 1980A(b)(2)(D). For losses resulting from traumatic brain injury resulting in an inability to perform at least two ADLs, the insured is entitled to $25,000 at the 15th consecutive day of ADL loss, an additional $25,000 at the 30th consecutive day of ADL loss, an additional $25,000 at the 60th consecutive day of ADL loss and an additional $25,000 at the 90th consecutive day of ADL loss. 38 C.F.R. § 9.20(f)(17).

Here, Defendant found Plaintiff failed to show the minimum fifteen consecutive days of ADL loss. The basis for this finding was Plaintiff's failure to provide sufficient medical information to support his claimed inability to perform the ADLs. Plaintiff raises four arguments as to why this decision should be reversed. First, he asserts a November 5, 2013 email from Mary Koontz to his counsel is evidence that Defendant's decision was arbitrary, capricious and unlawful. Second, Plaintiff asserts Defendant did not provide him with internal documents created during the administrative review process, which was arbitrary, capricious, an abuse of discretion and contrary to law. Third, Plaintiff argues Defendant misstated the evidence, addressed the evidence in conclusory fashion and failed to apply the correct legal standard, which was arbitrary and capricious, an abuse of discretion and contrary to law. Finally, Plaintiff contends there was sufficient evidence to support his claim.

A.  **The November 5, 2013 Email**

On November 5, 2013, Mary Koontz, Branch of Service Program Manager for Traumatic Injury SGLI and Family SGLI, sent an email to Plaintiff's counsel, apparently in response to Plaintiff's claim. (AR at ADM000321-22.) In that email, Ms. Koontz sets out "the requirements for filing an application for TSGLI." (*Id.* at 321.) Plaintiff asserts Ms. Koontz's email sets out "additional criterion" for adjudicating Plaintiff's claim, which

is "arbitrary, capricious and unlawful." (Pl.'s Mem. of P. & A. in Supp. of Mot. at 15.) However, Ms. Koontz does not set forth any "additional criterion" for adjudicating TSGLI claims. Rather, Ms. Koontz appears to be explaining the requirements for filing claims in the first instance. Indeed, the email was sent after Plaintiff's claim was submitted but before it was denied, and states in the closing paragraph, "Once we have received the necessary legal documents from SDP and LODI, we will begin the process of review. Until such time, the claim will be held in suspense." (AR at ADM000322.) Furthermore, the specific portion of the letter cited by Plaintiff is not relevant to Plaintiff's claim. It concerns single limb injuries, not traumatic brain injuries, which is what Plaintiff suffered here. (*Id.*) Thus, Plaintiff's argument concerning Ms. Koontz's email does not show Defendant's decision to deny Plaintiff's claim was arbitrary, capricious or otherwise unlawful.

**B.     Failure to Provide Documents**

Next, Plaintiff argues Defendant did not provide him with "significant internal documents" generated during the administrative process. (Pl.'s Mem. of P. & A. in Supp. of Mot. at 15-16.) He specifically cites a June 23, 2014 Memorandum from T.A. Belcher, Cdr., MC, USN, (AR at AMD000403), and a January 22, 2015 Memorandum from the TSGLI Appeals Board. (*Id.* at AMD000413-14.) Plaintiff asserts Defendant's failure to provide him with these documents rendered Defendant's denial of Plaintiff's claim "arbitrary, capricious, an abuse of discretion, and contrary to law." (Pl.'s Mem. of P. & A. in Supp. of Mot. at 16.)

The June 23, 2014 Memorandum does not provide any information not included in the denial letter of June 27, 2014. (*Compare* AR at ADM000403 *with* ADM000404.) The January 22, 2015 Memorandum provides a more detailed analysis of Plaintiff's claim, but, it, too, provides the same conclusion provided in the January 22, 2015 denial letter. (*Compare* AR at AMD 000411 *with* AMD000413-14.) Therefore, Plaintiff's assertion that he was "left at a disadvantage because he was not aware of the reasons for the denial" is not borne out by the evidence. Moreover, Plaintiff fails to explain how his third appeal or his request for reconsideration would have been any different if he had the Memoranda

identified above. Accordingly, Plaintiff's second argument does not show Defendant's denial of the claim was arbitrary, capricious or otherwise unlawful.

## C. Adjudication of the Claim

Finally, Plaintiff raises a number of arguments in response to Defendant's actual denial of Plaintiff's claim. Specifically, Plaintiff asserts Defendant failed to apply the proper standard of review and failed to consider the evidence supporting the claim.

In support of his argument that Defendant failed to apply the proper standard of review, Plaintiff cites the final decision at the BCNR. (*Id.* at ADM000477-78.) That decision states, "The injuries you suffered do not per se require assistance to perform ADLs." (*Id.*) Plaintiff asserts this statement evidences Defendant applied the wrong standard of review, but the Court disagrees with Plaintiff's interpretation of the evidence. This statement does not indicate Defendant applied the wrong standard of review. All it states is Plaintiff's injuries are not the type that automatically show an inability to perform ADLs. There is nothing arbitrary or capricious about that statement, or Defendant's inclusion of that statement in its final denial of Plaintiff's claim.

Next, Plaintiff argues there was evidence to support his claim, and Defendant either ignored it or failed to consider it properly. First, there is no evidence Defendant ignored Plaintiff's evidence. On the contrary, the record reflects Defendant reviewed all the evidence submitted. (*See id.* at ADM000404) (stating "medical evidence you provided was evaluated by a Medical Officer assigned to the Navy Personnel Command.") Second, there is no evidence Defendant failed to properly consider Plaintiff's evidence. Rather, the record reflects Defendant considered the evidence submitted, and based on that evidence, determined Plaintiff had not shown an inability to perform two ADLs for the requisite number of days. Contrary to Plaintiff's suggestion, Defendant was not required to simply accept Plaintiff's evidence and award him benefits. *See Coker*, 2016 U.S. Dist. LEXIS 173104, at *15 (quoting *Martindale v. United States*, No. 3:15-CV-00581-GNS-DW, 2016 U.S. Dist. LEXIS 99362, at *4 (W.D. Ky. July 29, 2016)) ("Contrary to Plaintiff's argument, it is not 'arbitrary and capricious for the Army to examine and evaluate the

underlying records itself, rather than relying on the certifying medical professional's interpretation of the same records.'") (quotation marks omitted). Defendant was entitled to, and did, conduct its own evaluation of the evidence, and based on that evaluation, determined Plaintiff had not met the standard for an award of benefits. Although Plaintiff disagrees with that decision, there is evidence to support it. Specifically, the medical records are silent on Plaintiff's claimed inability to perform two ADLs for the required length of time. On the contrary, the medical records reflect that slightly more than two weeks after the accident, Plaintiff reported "No dizziness, no vertigo, no decrease in consciousness, no decrease in concentrating ability, no confusion, no memory lapses or loss, no taste disturbances, no speech difficulties, no arm weakness, and no leg weakness. No gait abnormality. Good coordination and no sensory disturbances." (*Id.* at ADM000278.) Considering the record as a whole, there was nothing arbitrary, capricious or unlawful about Defendant's denial of Plaintiff's claim.

### III.

### CONCLUSION

For the reasons set out above, the Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment. The Clerk of Court shall enter judgment accordingly, and close this case.

**IT IS SO ORDERED.**

Dated: June 6, 2017

Hon. Dana M. Sabraw
United States District Judge